MONTROSE BROWN (ADMINISTRATRIX), MRS. JAMES F. BROWN (WIDOW), LILLIE MAY BROWN AND CHARLES BROWN (MINOR CHILDREN) OF JAMES F. BROWN, DECEASED (EMPLOYEE), v. L. H. BOTTOMS TRUCK LINES, INC. (EMPLOYER), AND LUMBER MUTUAL CASUALTY COMPANY (CARRIER).

(Filed 9 April, 1947.)

**1. Master and Servant § 55d: Appeal and Error § 40a—**

Where the finding of the Industrial Commission that the injured worker was an employee and not an independent contractor is based upon the legal effect of the written contract between the parties, the question is one of law, reviewable on appeal, and is presented by an exception to the judgment of the Superior Court affirming the award of the Industrial Commission.

**2. Master and Servant § 4a—**

The authority and control retained by the person for whom the work is being done is the criterion for determining whether the workman is an employee or an independent contractor.

**3. Master and Servant § 39b—**

A written agreement under which a licensed carrier by truck in interstate commerce leases an owner driven vehicle for an interstate trip, with

---

provision that carrier's Interstate Commerce Commission Identification plates be attached for the trip and removed at the destination terminal and that upon discharge of the truck's lading at destination the truck be delivered into the possession of the lessor, *is held* to constitute the owner-driver an employee of the carrier within the purview of the Workmen's Compensation Act while transporting goods in interstate commerce.

**4. Carriers § 5—**

Where a carrier licensed to transport goods by truck in interstate commerce leases a vehicle from an owner not so licensed and attaches its plates to the vehicle while engaged in transporting goods in interstate commerce, *it is held* the contract of lease will be presumed to have been made in contemplation of the pertinent Federal Statutes and regulations of the Interstate Commerce Commission, requiring retention of control over the vehicle by the franchise owner, and drivers of such vehicle, as a matter of public policy, will be held employees of the carrier and not independent contractors for the purpose of determining liability of the carrier.

**5. Master and Servant § 38—**

An employer within the purview of the Workmen's Compensation Act may not escape liability thereunder by any provision in his contract with an employee under which the employee agrees to indemnify and save the employer harmless from any claim arising in the performance of the work. G. S., 97-6.

PETITION to rehear decision reported *ante,* 65, 40 S. E. (2d), 476.

*Charles W. Taylor and Ehringhaus & Ehringhaus for petitioner, appellant.*
*Wm. E. Comer for respondent, appellees.*

DEVIN, J. The petition to rehear the appeal and to reconsider the decision heretofore rendered on procedural grounds, affirming the judgment below, reported *ante,* 65, 40 S. E. (2d), 476, was allowed for the reason that the defendants' exception to the judgment, under the facts of this case, is regarded as sufficient to bring up for review the single question of law presented by the written contract between claimants' intestate and the defendant Motor Lines, appearing in the record, which was relied on by defendants as establishing the relationship between them of independent contractor, rather than that of employee, as found by the Industrial Commission. In this view the rule laid down in *Rader v. Coach Co.,* 225 N. C., 537, 35 S. E. (2d), 609, 610, and *Fox v. Mills, Inc.,* 225 N. C., 580, 35 S. E. (2d), 869, is not deemed applicable to this case, and consequently the defendants are entitled to have their contention of non-liability on the ground that claimants' intestate was at the time and in respect to the injury complained of an independent contractor, duly considered and decided on its merits.

The plaintiffs' claim for compensation, under the Workmen's Compensation Act for the death of James F. Brown, alleged to have been

due to an injury by accident arising out of and in the course of his employment by the defendant Motor Lines, was allowed by the Industrial Commission, and approved and affirmed by the court below, upon the following findings of fact by the Industrial Commission:

"That L. H. Bottoms (Truck Lines) is engaged in the trucking business with its principal office and place of business in High Point, North Carolina, and holds itself out to the public to haul all kinds of freight, merchandise, supplies and equipment usually and customarily hauled by automotive truck throughout this state and other states; and in said capacity the said L. H. Bottoms Truck Lines has been authorized to do such hauling in interstate commerce by the Interstate Commerce Commission of the United States, and for said purpose has been assigned a certain license plate and number to be used upon its trucks when so engaged in transporting freight for hire in interstate commerce.

"That on or about the 14th day of March 1944, the defendant, L. H. Bottoms Truck Lines, had more freight accumulated in its warehouse than it had trucks of its own to carry; and in order to facilitate the delivery of this freight to its customers, L. H. Bottoms Truck Lines contacted the deceased, James F. Brown, who lived in the vicinity and owned a truck of his own and did local hauling for himself and other people of freight and other commodities. The deceased Brown did not have a license from the Interstate Commerce Commission that would permit him to haul the kind of freight that Bottoms wished to have hauled in interstate commerce; therefore, the said L. H. Bottoms Truck Lines and the said James F. Brown, deceased, entered into an agreement in writing, which is offered in evidence, by the terms of which agreement the said Brown leased his truck to the defendant Bottoms upon the terms and conditions as set out in said lease, and the said Bottoms was to furnish and supply to said truck leased from Brown with an interstate commerce license that would permit said truck to transport merchandise in interstate commerce and especially to carry the load in question from High Point in the State of North Carolina to the City of Norfolk in the State of Virginia. Said agreement was entered into and the truck so owned by J. F. Brown and so leased to L. H. Bottoms Truck Lines was on or about March 13th loaded by the employees of the L. H. Bottoms Truck Lines at its warehouse in High Point, North Carolina, with a load of merchandise in transit and being handled by the defendant Bottoms and consigned to Norfolk, Virginia.

"That the deceased, James F. Brown, operating said truck so leased, left High Point on the morning of March 14, 1944, and was proceeding on the usual and customary route from High Point, North Carolina, to Norfolk, Virginia, to unload said merchandise under the provisions of said lease; and while en route to Norfolk (in Virginia), the truck in which the said Brown was riding and operating for the said L. H. Bot-

toms Truck Lines collided with another truck upon the highway and the said Brown was killed.

"The Commissioner finds as a matter of law that when the deceased, Brown, leased his equipment to L. H. Bottoms Truck Lines that the control of said equipment for the purpose of hauling said load from High Point, North Carolina, to Norfolk, Virginia, passed out of the control of the deceased, J. F. Brown, and that the control of said equipment was solely and exclusively in the possession of the defendant Bottoms; and that any person operating said truck after the execution of said lease was an employee of the defendant, L. H. Bottoms Truck Lines, at the time of his death, and that the injury resulting in his death was due to an accident arising out of and in the course of his employment."

The terms of the lease agreement referred to are as follows:

"1. It is agreed L. H. Bottoms Truck Lines, leases from Jas. F. Brown, Lessor, of Greensboro, the following described Motor Vehicle to be used by said lessee in its interstate service to transport merchandise from High Point, N. C., to Norfolk, Va., and on or about the date of this agreement (Description of Vehicle):

"2. Upon arrival of this vehicle at the destination terminal named in the preceding paragraph the lessee will immediately upon discharge of its lading deliver said vehicle into the possession of the lessor or its agent at the point of discharge of lading.

"3. The lessor agrees to pay all maintenance and all operating expenses of the said motor vehicle while in the use of the lessee. The lessor guarantees said motor vehicle against any defects, latent or otherwise, as of the date hereof, and warrants the said motor vehicle fully meets the requirements of all applicable Federal and state laws, rules or regulations. The lessee shall not be liable for any damage or depreciation that may occur to said motor vehicle while in its possession under this lease.

"4. The lessor further agrees to indemnify and save harmless the lessee against any claim arising from the operation of the vehicle or vehicles named in paragraph (1) thereof, and against any claim for loss or damage to any shipment or shipments being transported in said vehicle or vehicles.

"5. The lessee will pay to the lessor the sum of $40,00, computed at the rate of per load cents per (CWT) (or mile) for a load of.... ......... .. pounds, less $............ (Driver's wages), for the use of the motor vehicle in the service described in paragraphs one and two hereof.

"6. The lessee assigns and affixes to said vehicle for the duration of this lease, Interstate Commerce Commission identification plates number, as shown in paragraph (1), which must be removed at the aforementioned destination terminal and remain only in the possession of the

lessee, before full payment of the rental sum, as provided for herein, is made."

The facts found are not controverted. The only question now presented is whether, as a matter of law, these facts are sufficient to support the conclusion of the Industrial Commission and the judgment of the Superior Court based thereon. This presents a question appropriate for appellate review. *Wood v. Miller*, 226 N. C., 567, 39 S. E. (2d), 608. If there are facts in evidence or permissible inferences to be drawn therefrom which support the conclusion of the Industrial Commission, the judgment must be upheld, *Edwards v. Pub. Co., ante,* 184, 41 S. E. (2d), 592, "though other inferences may appear equally plausible." *Rewis v. Ins. Co.,* 226 N. C., 325, 38 S. E. (2d), 97.

It is the contention of the defendants that the terms of the contract whereby Brown's truck was leased to the defendants for the transportation of goods for them to Norfolk, Virginia, were sufficient to establish conclusively that the relationship of Brown to the defendants and to the transaction was that of an independent contractor. Defendants urge that there is no other possible interpretation of the contract.

What constitutes one an independent contractor is fully set out in *Hayes v. Elon College,* 224 N. C., 11, 29 S. E. (2d), 137, and the phrase need not be again defined. The right or power of control retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee or an independent contractor. 71 C. J., 449; *Wood v. Miller, supra; Lassiter v. Cline,* 222 N. C., 271, 22 S. E. (2d), 558.

The defendants cite in support of their contention the case of *Greyvan Lines v. Harrison,* decided in 1944 in the U. S. District Court for the Northern District of Illinois, in which it was held that the relationship of employer and employee did not exist between the Trucking Company and the owners of trucks with whom the company contracted for the transportation of goods or those hired by the truck owners to assist in operating the trucks. The only question presented in that case was the power of the Collector of Internal Revenue to collect taxes and penalties as assessed under Federal Social Security Laws against the company upon payments made to truckers operating under contracts similar to that in the case at bar. The District Court held the Company not liable for the tax on these payments. The decision does not seem to have been reviewed by an appellate court.

However, we are not disposed to hold the conclusion reached by the Judge in the *Greyvan case* as determinative of the question presented in the case at bar.

Here the defendant Bottoms Truck Lines was a motor carrier of goods in interstate commerce, operating under authority of a certificate or license issued by the Interstate Commerce Commission. Transporta-

tion in interstate commerce by an interstate motor carrier. is subject to the applicable provisions of the Federal statutes governing such carriage, and the rules, regulations and requirements of the Interstate Commerce Commission. 49 U. S. C. A., secs. 301, et seq. Under the Federal statute the defendant was required to attach to each vehicle used in such transportation the identification or license plates prescribed for it by the Commission (49 U. S. C. A., sec. 324). In order to augment its equipment for the transportation of goods, the defendant obtained by contract the use of Brown's owner-driven truck to be added to its own fleet of trucks for the transportation of certain goods from High Point, North Carolina, to Norfolk, Virginia, and in the contract it was stipulated, in accordance with the requirements of the statute and the regulations of the Interstate Commerce Commission, that the license plates issued by the Commission to the defendant Truck Lines for its own trucks must be attached to and used by the Brown truck, thus identifying the truck as being used by the named defendant under its franchise. The Brown truck could not have been driven over the highways to Virginia in interstate commerce without being thus identified. It could not have been used independently or in any other way for this interstate transportation. The truck for the period of transportation was in the possession of defendant Truck Lines, and only at the end of the journey was it to be delivered back to the lessor as provided in section 2 of the contract. The operation of the truck was in law under the supervision and control of the interstate franchise carrier and could be lawfully operated only by those standing in the relationship of employees to the authorized carrier. Brown had no franchise right independent of the defendant. The insurance on the cargo in the Brown truck was carried by the defendant. As a witness for the defendants testified, "He (Brown) had no right to transport .anything we had turned over to him," nor was he at liberty to pick up other loads along the route to Norfolk. The defendant Motor Lines could not contract for the use of a truck or employ an independent truck owner not a holder of certificate or permit from the Interstate Commerce Commission (49 U. S. C. A., sec. 311), except under its own license plates, and by virtue of its franchise.

The transportation of goods in interstate commerce by motor vehicles was required to be under the rules and . regulations of the Interstate Commerce Commission, and the Brown truck could only have been used in such transportation by the defendant franchise carrier as one of its fleet of trucks under its license plates. Hence it would seem to follow that control of the operation for the period of the lease was given to the licensed carrier, and that the owner-driven truck was in contemplation of law in its employ and the driver for the trip stood on the relationship of its employee, as found by the Industrial Commission.

We think the applicable rule, under the facts here presented, is that the lease or contract by which the equipment of the authorized interstate carrier was augmented, must be interpreted as carrying the necessary implication that possession and control of the added vehicle was, for the trip, vested in the authorized operator.

This conclusion is in accord with well considered decisions in other jurisdictions.

In *Steffens v. Continental Freight Forwarders Co.*, 66 Ohio App., 534, where a truck being operated under license of the defendant, an Ohio corporation, by an independent contractor, negligently injured plaintiff in Pennsylvania, it was held that while under Pennsylvania law ordinarily the defense of independent contractor was available, the Federal statutes relating to motor carriers in interstate commerce, and the regulations of the Interstate. Commerce Commission were controlling, and the defendant was held liable, since the operation was under the franchise holder. In support of the conclusion reached the Court cited the ruling of the Interstate Commerce Commission, made 13 August, 1936, to the effect that where the authorized motor carrier added to its equipment by leasing a vehicle and obtained the services of the owner-driver, the lease authorizing it "must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor; that the operation must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master."

The use of the Brown truck in the case at bar was presumed to have been contracted for in contemplation of and subject to the pertinent provisions of the Federal statutes and the regulations of the Interstate Commerce Commission in relation thereto then in force.

A case similar in material respects to the case at bar is *Hodges v. Johnson*, 52 F. Supp., 488. In that case Jocie Motor Lines, the holder of a certificate from the Interstate Commerce Commission authorizing transportation of goods in interstate commerce, entered into contract with Johnson, who was engaged in the trucking business but without certificate as interstate carrier, whereby Johnson leased his truck to transport goods for Jocie from Charlotte, North Carolina, to Roanoke, Virginia, under Jocie's certificate and license from the Interstate Commerce Commission. Jocie did not undertake to direct or supervise the operation of Johnson's truck and Johnson hired and fired his drivers without regard to Jocie. On the return trip from Roanoke, in Virginia, Hodges was killed as result of collision with Johnson's truck. The court held, in an opinion by Judge Barksdale, that while under the general rule Johnson would be regarded as an independent contractor relieving

Jocie of liability for his negligence, under the facts disclosed "public policy requires that the holder of a franchise or certificate·from the Interstate Commerce Commission for the operation of freight vehicles in interstate commerce upon the public highways be held responsible for the operation of such vehicle under said franchise or certificate by independent contractors of such certificate holders, their servants and agents. Otherwise, the public might be deprived of the safeguards to the public required by the Interstate Commerce Commission, by means of certificate holders evading their responsibility, by the employment of irresponsible persons as independent contractors." The same ratio *decidendi* was announced in *Venuto v. Robinson,* 118 F. (2d), 679, 28 A. L. R., 122. See also *Stickel v. Erie Motor Freight Co.,* 54 Ohio App., 74; *Emerson v. Park,* 84 S. W. (2d), 1100; *King v. Brenham Auto Co.,* 145 S. W., 278.

In Restatement Law of Torts, the rule is stated as follows: "Sec. 428. Contractor's negligence in doing work which cannot be lawfully done except under a franchise granted to his employer. An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

In *Kimble v. Wilson,* 352 Pa., 275, where a steel company leased a truck and driver for the delivery of some of the company's products, the truck owner not having authority from the Utilities Commission to be a contract carrier, it was held that the lessor was not an independent contractor as he operated under the rights of another. And in *Brinker v. Koenig Coal Co.,* 312 Mich., 534, where a coal dealer employed an owner driven truck to deliver coal, it was held under the facts of that case the truck owner was not an independent contractor.

The provision in the contract in the case at bar whereby the lessor Brown agreed to indemnify and save harmless the lessee from any claim arising from the operation of the vehicle may not be held to relieve the defendant, if as a matter of law under the facts found liability under the Workmen's Compensation Act accrued, as provided by the statute. G. S., 97-6.

The act of the defendant in accord with the provisions of the lease in placing its own license plates on Brown's truck under the circumstances disclosed, thus giving it the status and holding it out as its own vehicle for the purposes of this trip, a procedure which alone authorized its operation, must be regarded as an assumption of such control as would defeat the plea of non-liability for injury to the driver on the ground of independent contractor. Control of the employer must be completely surrendered to relieve liability. *Leonard v. Transfer Co.,* 218 N. C., 667,

12 S. E. (2d), 729. The defendant corporation having been given a franchise for the operation of motor trucks on the highway as a carrier of goods in interstate commerce, cannot evade its responsibility by delegating its authority to others. *King v. Brenham Auto Co., supra.* Nor may an employer, by leasing the truck of one not authorized to transport goods in interstate commerce and causing its operation under its own franchise and license plates for interstate transportation avoid legal responsibility therefor.

We conclude that the judgment of the Superior Court should be affirmed, and the petition dismissed.