BURDER REEVES, BETTY ANN REEVES, AND WELLS TRANSPORT, INC. v. B&P MOTOR LINES, INC., AND CAROLINA CASUALTY INSURANCE COMPANY OF FLORIDA

No. 8528SC916

(Filed 19 August 1986)

**Insurance § 90— truck—bob-tail insurance applicable**

The trial court erred by granting summary judgment for defendants where Reeves had been involved in a traffic accident with a truck which had been leased by Wells to B&P; Wells paid B&P for "bob-tail" insurance; Wells and B&P had cancelled the lease; the driver of the truck planned to buy it from Wells; and the accident occurred while he was driving it to his home. The "bob-tail" insurance endorsement excluded coverage whenever the lessor was in the business of the lessee and afforded coverage at all other times, with three explicit exceptions; it was uncontroverted that the driver was not in the business of B&P at the time of the accident and it was clear that the non-trucking use endorsement remained in effect and independent of the cancellation of the lease agreement.

Judge PARKER concurs in the result.

APPEAL by plaintiffs from *Gaines, Judge*. Judgment entered 1 May 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 16 January 1986.

*Reynolds & Stewart, by G. Crawford Rippy, III, for plaintiffs appellants.*

*Morris, Golding, Phillips & Cloninger, by James N. Golding, for defendant appellee.*

BECTON, Judge.

I

Plaintiffs appellants Burder and Betty Ann Reeves (the Reeves) and Wells Transport Company (Wells) brought a breach of contract action against defendant appellees B&P Motor Lines, Inc. (B&P) and Carolina Casualty Insurance Company of Florida (Carolina Casualty), seeking to recover on an insurance policy issued to B&P by Carolina Casualty.

By written agreement executed on 9 February 1981, Wells leased a 1967 Kenworth Truck (Unit 211) to B&P. Ralph Capps was the regular driver of Unit 211 for Wells. B&P paid Wells for "runs," and Wells would in turn pay its driver, Capps. Wells paid B&P eighteen dollars per month for "bob-tail" insurance. B&P deducted the eighteen dollars from its monthly settlement with Wells and added Wells to the fleet insurance policy it maintained with Carolina Casualty.

On the morning of 27 May 1982, Wells and B&P decided to cancel the lease agreement between them. Wells returned the license plates, certificate of authority, I.C.C. permits, decals and certificate of insurance pertaining to Unit 211 to B&P. At this time, Unit 211 was located on Wells' premises in Forest City, North Carolina. Capps and Eric Wells, President of Wells Transport, spent the day doing repairs to Unit 211, which Capps was planning to purchase from Wells.

At approximately 5:00 p.m., while driving Unit 211 to his home in Woodfin, North Carolina, Capps was involved in a traffic accident with the Reeves. The Reeves later recovered a judgment against Capps and Wells in the amount of $12,500.00, but they were unable to collect because both Capps and Wells were judgment proof. The Reeves and Wells then instituted this action against B&P and Carolina Casualty to recover on the insurance policy issued by Carolina Casualty with Wells Transport as a named insured. Both sides moved for summary judgment. By stip-

ulation of the parties, jury trial was waived, and the parties agreed to allow the trial court to decide the case "based on all of the depositions, adverse examinations, Interrogatories, answers and other pleadings filed in [the] case."

The trial court found that B&P did not breach its lease agreement with Wells because the lease had been cancelled by mutual consent before the accident. The court also found that the insurance policy at issue — which provided insurance for non-trucking use (or "bob-tail"), was still in effect as to Unit 211 until the end of May 1982, but that the trip undertaken by Capps on 27 May 1982, and during which the accident with the Reeves occurred, did not fall within the coverage of the policy. Summary judgment was entered in favor of B&P and Carolina Casualty. The Reeves and Wells appeal, and B&P and Carolina Casualty bring a cross-appeal. We reverse and remand as to Reeves' and Wells' appeal; we reject the cross-appeal.

## II

The Reeves and Wells present one question for our consideration — whether the trial court erred in concluding as a matter of law that the insurance policy which provided "bob-tail" coverage to Wells applied to the 27 May 1982 accident. In their cross-appeal, B&P and Carolina Casualty assign error to the trial court's conclusion that the policy was in effect at the time of the accident.

Because the parties by stipulation waived jury trial and chose to submit the case on the pleadings to the trial court, we are concerned in this appeal with whether the evidence supports the findings of fact and whether the findings of fact in turn support the trial court's conclusions of law, the same standard as for a full and formal bench trial. The findings and conclusions in the instant case suggest that the trial court misinterpreted the insurance policy and therefore erred by granting summary judgment in favor of defendants.

The trial court concluded, "Mr. Capps at the time of the accident . . . was not acting within the course and scope of the business of B&P . . .", and that therefore ". . . plaintiffs are not entitled to recover from the defendants, or either of them." We conclude, based on our analysis in Part III, that the fact that

Wells (or its agent, Capps) was not acting within the course and scope of the business of B&P at the time of the accident is precisely why the non-trucking use endorsement of the insurance policy *did* apply to this accident.

## III

Interstate Commerce Commission (I.C.C.) regulations mandate that licensees (like B&P) make certain that their lessors (like Wells) have adequate insurance to operate in interstate commerce. The reason for this requirement is that most lessor-independent contractors (Wells) are not licensed by the I.C.C. and only operate under the authority of a lessee-motor carrier's (B&P) I.C.C. permit. By analogy, we look to the public policy behind I.C.C. regulations, which imposes strict liability on the lessee-motor carrier for injuries to third parties when the lessor-independent contractor is operating in the course and scope of the business of the lessee-motor carrier. That policy is to prevent the motor carrier from avoiding safety standards (and insurance requirements) imposed by I.C.C. regulations by leasing equipment from non-regulated independent contractors. *See Hershberger v. Home Transport Co.*, 103 Ill. App. 3d 348, 431 N.E. 2d 72 (1982). In the same way, by requiring I.C.C. permittees to ensure that their lessors are adequately insured, the state is able to regulate the many independent contractors who might otherwise be able to avoid the constraints of insurance and/or licensing laws, posing great risks to the public safety and welfare.

This is exactly what B&P did in this case. Under the lease agreement, B&P undertook to maintain the insurance coverage which I.C.C. rules and regulations require it to provide—that is, it carried general liability insurance which covered Unit 211 while it was in the course and scope of the business of B&P. *In addition to this general liability coverage,* Wells agreed to pay B&P eighteen dollars per month to maintain "bob-tail" insurance with Carolina Casualty.

A "bob-tail" in trucking parlance is simply a tractor without a trailer. However, for insurance purposes, the term takes on a more complex meaning. Disputes over "bob-tail" insurance coverage in other cases have centered on whether the driver and tractor were "in the business of" the lessee-motor carrier at the time of the accident. If so, "bob-tail" insurance is *not* applicable. A case

in point in this jurisdiction is *McLean Trucking Company v. Occidental Fire & Casualty Company of North Carolina and Garland L. Wright,* 72 N.C. App. 285, 324 S.E. 2d 633, *disc. rev. denied,* 313 N.C. 603, 330 S.E. 2d 611 (1985). In *McLean,* the lessee-motor carrier sought to establish that a "bob-tail" policy endorsement afforded coverage to the lessor-independent contractor for claims arising out of an accident occurring after the lessor had returned to the point of origin but before he had reached his own home. We held that the lessor was not "in the business of" the lessee-motor carrier at the time of the accident under the terms of the "bob-tail" endorsements, and that the policy therefore afforded coverage. *McLean,* 72 N.C. App. at 292, 324 S.E. 2d at 637.

The endorsement at issue in this case, like the one in *McLean,* is denominated "Truckmen—Insurance For Non-Trucking Use (Bob-tail only)." It provided, *inter alia:*

2. The insurance does not apply:

   (a) while the automobile is used to carry property in any business;

   (b) while the automobile is being used in the business of any person or organization to whom the automobile is rented;

   (c) while a trailer or semi-trailer is attached to any tractor or truck-tractor described above.

We interpret the plain meaning of this provision, as we did in *McLean,* to *exclude* coverage whenever the lessor is "in the business of" the lessee, and to *afford* coverage at all other times, except those explicitly excluded in (a), (b), and (c). In fact, the appellant-lessee in *McLean* conceded that the *only time* a truckmen's endorsement (bob-tail) affords coverage is when the lessor has returned to the point of origin, discontinued all functions for the lessee, and begun the lessor's own personal endeavors. Brief for Appellant at 9, *McLean.* The only dispute in *McLean* was whether the "point of origin" was the lessee's terminal or the lessor's home.

There is no such dispute in the instant case. It is uncontroverted that Capps was *not* "in the business of" B&P at the time of the accident. It is also clear, and the trial court was cor-

rect in so ruling, that the non-trucking use endorsement remained in effect until 31 May 1982, independent of the cancellation of the lease agreement between Wells and B&P, because no notice of cancellation from Wells or B&P to Carolina Casualty was received until after the accident. There was a separate contractual relationship between Wells and Carolina Casualty with regard to the "bob-tail" insurance. The cancellation of the lease agreement alone had no bearing on this relationship. Wells was the named insured, and Capps was Wells' agent. Capps was also a named driver for Wells in the policy. Arguably, had Wells, or Capps, embarked on a purely personal frolic and detour from 27 May 1982 at 10:00 a.m. until 12:00 midnight on 31 May 1982 the tractor still would have been covered by the non-trucking use endorsement.

We hold, therefore, that the non-trucking use endorsement included coverage for Capps at the time of the 27 May 1982 accident. To construe the policy otherwise would be to render it meaningless and defeat the purpose that non-trucking use policies are intended to serve. "Bob-tail" insurance applies only in very limited circumstances. For this reason, "bob-tail" premiums are considerably lower than general liability premiums. Lessees, by I.C.C. regulation, must carry sufficient general liability insurance to cover their lessors whenever they are operating "in the business of" the lessee. In order to protect themselves from exposure to liability when their lessors are *not* acting "in the business of" the lessee-motor carriers, the latter require their lessors to purchase non-trucking use or "bob-tail" insurance. Often, but not exclusively, this insurance is maintained by the lessee-motor carrier and charged to the lessor. In fact, it is difficult to see how Carolina Casualty would be able to deny coverage on a policy purchased directly from it by a lessor-independent contractor and involved in a similar accident, because this is precisely the kind of situation for which a non-trucking use endorsement contemplates coverage.

The non-trucking use or "bob-tail" endorsement, as delineated in the provision at issue in this case, is at the very least designed to cover a trailer-less tractor whenever it is not being operated "in the business of" the lessee, or at any other time not otherwise expressly excluded under the insurance contract.

The judgment of the trial court is affirmed insofar as the court found the insurance policy to be in effect, and appellees' cross-appeal is rejected. The judgment of the trial court is reversed as to the granting of summary judgment against Reeves and Wells. This cause is remanded to the trial court for entry of judgment in favor of plaintiffs.

Affirmed in part, reversed in part, and remanded.

Judge WHICHARD concurs.

Judge PARKER concurs in the result.