JAMES M. PARKER AND WIFE, PATSY PARKER, Plaintiffs, v. HAROLD A. ERIXON AND, CHEMICAL LEAMAN TANK LINES, INC., Defendants

No. COA95-33

(Filed 6 August 1996)

**Carriers § 92 (NCI4th)— collision with leased tractor—lessee responsible only for acts committed within scope of lessor's employment**

North Carolina follows the rebuttable presumption of agency view under which an employment relationship is presumed between the parties bound by I.C.C. regulations, but this is rebuttable, and the carrier-lessee's liability is ultimately determined by resort to common law doctrines such as respondeat superior which generally operate to make the principal vicariously liable for the tortious acts committed by the agent within the scope of the agent's employment; therefore, the trial court erred in granting summary judgment for plaintiff in an action against the common carrier-lessee to recover for injuries received in a collision with the owner-lessor of a tractor where the owner deviated from the lease agreement with defendant carrier and was acting outside the scope of his employment when the accident occurred.

**Am Jur 2d, Automobile Insurance § 422.**

Appeal by defendant Chemical Leaman Tank Lines, Inc. from order entered 28 November 1994 by Judge W. Allen Cobb, Jr. in Pender County Superior Court. Heard in the Court of Appeals 5 October 1995.

*Mason and Boney by William Joseph Boney, Jr. for plaintiff-appellees.*

*Johnson and Lambeth, by John G. Tillery, III and Robert White Johnson for defendant-appellants.*

McGEE, Judge.

The parties stipulated to the following facts. On 18 December 1991, defendant Harold A. Erixon (Erixon) was the owner and operator of a 1990 White GMC highway tractor which he had leased, by an independent contractor service agreement, to defendant Chemical Leaman Tank Lines, Inc. (Chemical Leaman). The tractor bore an Interstate Commerce Commission (I.C.C.) identification code registered to Chemical Leaman. The contract between the lessee Chemical Leaman, a common carrier, and the lessor Erixon, the independent contractor and driver of the tractor which hauled Chemical Leaman's trailer, was governed by Interstate Commerce Commission rules and regulations.

On 17 December 1991, Erixon left Texas with his tractor pulling a Chemical Leaman trailer loaded with materials bound for the DuPont plant near Wilmington, North Carolina. Erixon arrived in North Carolina on the morning of 18 December 1991 and dropped the trailer at the Chemical Leaman yard. That afternoon, Erixon went off duty and departed the yard in his tractor bound for Trenton, North Carolina on a personal trip to visit his son. It was Erixon's intention to reattach the trailer to his tractor early on the morning of 19 December 1991 and deliver the trailer to the DuPont plant. While he was traveling to his son's house, Erixon crossed the centerline and collided head-on with plaintiff, James M. Parker.

On 13 October 1992, James Parker and his wife, Patsy, filed a civil action against Erixon and Chemical Leaman for injuries and damages resulting from the motor vehicle collision. Erixon filed an answer to the complaint on 25 November 1992 denying negligence and alleging sudden emergency and contributory negligence. On 30 November 1992, Chemical Leaman filed an answer and crossclaim contending it was not liable for Erixon's negligence under North Carolina state law

PARKER v. ERIXON

[123 N.C. App. 383 (1996)]

because Erixon was neither employed by nor under the direction or control of Chemical Leaman when the accident occurred. Erixon filed a reply to the crossclaim on 3 December 1993. Pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure, plaintiffs and Chemical Leaman filed a dismissal with prejudice of all claims against Erixon on 29 March 1994.

Chemical Leaman filed a motion for summary judgment against plaintiffs. This motion was heard by the court at the 6 February 1994 term of the Civil Superior Court for Pender County. On 28 November 1994, the court entered an order denying Chemical Leaman's motion for summary judgment and granting plaintiffs' Rule 56 motion for summary judgment as to the issue of agency between Chemical Leaman and Erixon. The trial court's order stated "there exists in law and fact an irrebuttable presumption of agency between the Defendant, Chemical Leaman Tank Lines, Inc. and the Defendant, Harold A. Erixon." From this order, Chemical Leaman appeals.

The question for this Court is whether the law supports the trial court's conclusion that there is an irrebuttable presumption of agency between the carrier, Chemical Leaman, and the independent contractor, Harold Erixon. If so, then Chemical Leaman will be held strictly liable for all of Erixon's actions, regardless of whether Erixon was acting outside the scope of his employment at the time the negligent act occurred. Our state courts have only briefly addressed this issue and the Fourth Circuit Court of Appeals has only dealt with the issue of liability when an independent contractor hauling cargo under a carrier's I.C.C. authority is acting within the scope of employment with the carrier. *See Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89 (4th Cir. 1974).

The I.C.C. regulation at issue in this case is the provision entitled *"Exclusive possession and responsibilities"*:

The lease [between independent contractor and carrier] shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee *shall assume complete responsibility* for the operation of the equipment *for the duration of the lease.*

49 C.F.R. Chapter X § 1057.12(c)(1) (1995) (emphasis added). This language has caused confusion and two lines of authority have

emerged on this issue, being a rebuttable versus an irrebuttable presumption of agency (employment) between the independent contractor and the carrier. *Wyckoff v. Marsh Bros. Trucking*, 569 N.E.2d 1049, 1052 (1991).

Under the rebuttable presumption of agency view, an employment relationship is presumed between the parties bound by the I.C.C. regulations, but this is rebuttable, and "the carrier-lessee's liability is ultimately determined by resort to common-law doctrines such as *respondeat superior*" which generally operate to make the principal vicariously liable for the tortious acts committed by the agent within the scope of the agent's employment. *Id.; See also Wilcox v. Transamerican Freight Lines, Inc.*, 371 F.2d 403, 404 (6th Cir. 1967), *cert. denied*, 387 U.S. 931, 18 L. Ed. 2d 992 (1967); *McLean Trucking Co. v. Occidental Casualty Co.*, 72 N.C. App. 285, 289-91, 324 S.E.2d 633, 635-36, *disc. review denied*, 313 N.C. 603, 330 S.E.2d 611 (1985) (discussing the I.C.C. regulations and cases in various circuits which hold the carrier strictly liable versus other circuits which impose liability only when the contractor is operating in the business of the carrier).

A second line of authority is that the I.C.C. regulations create an irrebuttable presumption of agency between parties, which is referred to as the doctrine of statutory employment. *Wyckoff*, 569 N.E.2d at 1053. Under this view, the courts strictly construe the I.C.C. regulations. For the duration of the lease, a carrier is held liable as a matter of law for all acts of independent contractors, regardless of whether or not the contractor was acting within the scope of his employment at the time the negligence occurred. *Id.; See also Rodriquez v. Ager*, 705 F.2d 1229, 1235-36 (10th Cir. 1983); *Simmons v. King*, 478 F.2d 857 (5th Cir. 1973).

The Fourth Circuit Court of Appeals considered whether a carrier is liable for the negligent acts of an independent contractor when the contractor is operating within the business of the carrier in *Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89, 90 (4th Cir. 1974). The court stated the I.C.C. "regulations were promulgated by the Commission to correct widespread abuses incident to the use of leased equipment by the carriers." *Proctor*, 494 F.2d at 91-92. "The statute and regulatory pattern [of the I.C.C. regulations] clearly eliminates the independent contractor concept from . . . lease arrangements and casts upon [the carrier] full responsibility for the negligence of [the driver] of the leased equipment." *Id.* at 92.

Since *Proctor* was decided, the I.C.C. regulations have been reorganized. *See Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc.*, 719 F. Supp. 455, 457-58 (W.D. Va. 1989), *affirmed*, 907 F.2d 34 (4th Cir. 1990) (discussing the history of the I.C.C. regulations). In *Penn v. Virginia Intern. Terminals, Inc.*, 819 F. Supp. 514 (E.D. Va. 1993) the federal district court discussed *Proctor*, as well as a line of Indiana cases, which held carriers strictly liable on the theory that I.C.C. regulations have eliminated the independent contractor concept and therefore traditional common law doctrines of employer-employee and *respondeat superior* do not determine I.C.C. carrier liability. *Penn*, 819 F. Supp. at 521-22. The *Penn* Court noted that in 1992, the I.C.C. amended the regulations dealing with written lease requirements by adding the following provision:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 11107 and attendant administrative requirements.

49 C.F.R. Chapter X § 1057.12(c)(4). This new provision, according to the *Penn* Court, "confirm[ed] the Commission's view that the type of control required by the [I.C.C.] regulation[s] does not affect 'employment' status and that it is not the intention of the regulations to affect the relationship between a motor carrier lessee and the independent owner-operator lessor." *Penn*, 819 F. Supp. at 522 (citation omitted). After discussing the new I.C.C. regulations, the *Penn* Court stated the Indiana cases holding carriers strictly liable were "based upon an interpretation of the ICC regulations that were unintended by the ICC." *Id.* at 523. The *Penn* Court further declared:

> Those cases find that an employer-employee relationship between lessee-lessor is mandated by the provision of 49 C.F.R. § 1057.12(c)(1), which places exclusive possession, control, use and operation of the leased equipment under the lessor. This Court believes that is a misinterpretation of the regulation, especially with the hindsight provided by the 1992 amendment to 49 C.F.R. § 1057.12(c).

*Id.*

I.C.C. decisions appear to support the *Penn* court's view. In *Ex Parte No. MC-203 Petition to Amend Lease and Interchange of*

*Vehicle Regulations*, 8 I.C.C.2d 669, 670 (1992), the Commission said, "[the petitioners'] proposed amendment [to add paragraph (c)(4)] is designed to give notice to the courts and worker's compensation or other administrative tribunals that our 'control regulation' in 49 C.F.R. § 1057.12(c)(1) . . . is not intended to affect the relationship between a motor carrier lessee and the independent owner-operator lessor." The Commission concluded:

> The Commission's regulations are silent on the agency status of lessors, and our decisions are clear that the Commission has taken no position on the issue of independence of lessors. However, we are convinced by the comments that the proposed amendment will serve a useful purpose and should be adopted . . . .
>
> While most courts have correctly interpreted the appropriate scope of the control regulation and have held that the type of control required by the regulation does not affect "employment" status, it has been shown here that some courts and State workers' compensation and employment agencies have relied on our current control regulation and have held the language to be *prima facie* evidence of an employer-employee relationship. These State agencies often find that the current regulation evidences the type of control that is indicative of an employer-employee relationship.
>
> We conclude that adopting the proposed amendment will reinforce our view of the neutral effect of the control regulation and place our stated view squarely before any court or agency asked to interpret the regulation's impact. . . . By presenting a clear statement of the neutrality of the regulation, we hope to bring a halt to erroneous assertions about the effect and intent of the control regulation, saving both the factfinders and the carriers time and expense.

*Ex Parte No. MC-203*, 8 I.C.C.2d at 671 (citation omitted). In an earlier decision the Commission, commenting on the effect of displaying I.C.C. placards after the lease has been terminated said, "[t]he Commission did not intend that its leasing regulations would supersede otherwise applicable principals [sic] of State tort, contract, and agency law and create carrier liability where none would otherwise exist." *Ex Parte No. MC-43 (SUB-NO. 16.)*, Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986).

PARKER v. ERIXON

[123 N.C. App. 383 (1996)]

While our state courts have not directly addressed this question, plaintiffs contend the facts of an earlier North Carolina case, *Brown v. Truck Lines*, 227 N.C. 299, 42 S.E.2d 71 (1947) are "strikingly similar" to the facts of this case and they urge us to follow the rules established in *Brown* by our Supreme Court. *Brown* is a 1947 workers' compensation case in which the plaintiff truck driver leased his equipment to defendant L.H. Bottoms Truck Lines, Inc. for the purpose of hauling cargo from High Point to Norfolk, Virginia. Plaintiff died from injuries he received as a result of "an accident arising out of and in the course of his employment." *Brown*, 227 N.C. at 302, 42 S.E.2d at 73. The Supreme Court addressed the question of whether Brown was an independent contractor or an employee for workers' compensation purposes. The Court noted defendant Bottoms Truck Lines was a motor carrier of goods in interstate commerce and was therefore subject to the federal regulations and requirements of the Interstate Commerce Commission and that the plaintiff's truck was only entitled to engage in interstate commerce under the authority vested in defendant by the Commission. *Id.* at 304, 42 S.E.2d at 74-75. The Court concluded:

> Hence it would seem to follow that control of the operation for the period of the lease was given to the licensed carrier, and that the owner-driven truck was in contemplation of law in its employ and the driver for the trip stood on the relationship of its employee, as found by the Industrial Commission.

> We think the applicable rule, under the facts here presented, is that the lease or contract by which the equipment of the authorized interstate carrier was augmented, must be interpreted as carrying the necessary implication that possession and control of the added vehicle was, for the trip, vested in the authorized operator.

*Id.* at 304-05, 42 S.E.2d at 75. We agree with plaintiffs that *Brown* established the rule that lessors who operate in interstate commerce under the license tags and authority granted to the lessee by the I.C.C. are deemed employees of the lessee for the duration of the trip. However, we do not read *Brown* as requiring the lessee to be held strictly liable for all of the actions of the lessor. A fact critical in the *Brown* case was that the plaintiff's "death was due to an accident arising out of and in the course of his employment." *Id.* at 302, 42 S.E.2d at 73. In this case, Erixon's off-duty trip to visit his son constituted a distinct departure from his employment, and was not within the course and scope of his employment.

PARKER v. ERIXON

[123 N.C. App. 383 (1996)]

In two later cases, this Court answered insurance coverage questions for parties subject to the I.C.C. regulations and in each case, the Court briefly addressed the issue of carrier liability. *See McLean Trucking Co.*, 72 N.C. App. at 290-91, 324 S.E.2d at 636; *Reeves v. B&P Motor Lines, Inc.*, 82 N.C. App. 562, 565-66, 346 S.E.2d 673, 675-76 (1986). In *McLean Trucking Co.*, our Court said the I.C.C. has broad regulatory authority and that I.C.C. regulations modify the common law doctrine of *respondeat superior. McLean Trucking Co.*, 72 N.C. App. at 289, 324 S.E.2d at 636. The case discussed the I.C.C. requirements and how other circuits have interpreted these regulations. *Id.* at 289-90, 324 S.E.2d at 636. However, this Court declined to answer the question of whether North Carolina follows the irrebuttable presumption of agency holding carriers strictly liable stating, "[p]laintiff McLean's [common carrier lessee] liability for the acts of defendant Wright [driver lessor] is not the issue before this court." Id. at 290, 324 S.E.2d at 636.

A year later this Court suggested North Carolina follows the rebuttable presumption of agency and imposes liability on the carrier only when the independent contractor is acting in the course and scope of his employment when our Court said:

> [W]e look to the public policy behind I.C.C. regulations, which imposes *strict liability* on the lessee-motor carrier for injuries to third parties *when the lessor-independent contractor is operating in the course and scope of the business of the lessee-motor carrier.* That policy is to prevent the motor carrier from avoiding safety standards (and insurance requirements) imposed by I.C.C. regulations by leasing equipment from non-regulated independent contractors.

*Reeves*, 82 N.C. App. at 565, 346 S.E.2d at 675 (emphasis added).

The I.C.C. regulations were not intended to impose upon carriers using leased equipment or the services of independent contractors greater liability than that imposed when a carrier uses its own equipment or employees. Under North Carolina law, liability of an owner of a motor vehicle for the acts of his employee is governed by the principle of *respondeat superior. See McNair v. Lend Lease Trucks, Inc.*, 62 F.3d 651, 654 (4th Cir. 1995). Under this principle, the employer is held vicariously liable for the negligent actions of his employee "if the negligent conduct occurred while the employee was acting within the course and scope of his employment." *Id.* This same rule should apply to carriers who have leased equipment or arranged for the services of an independent contractor.

## PARKER v. ERIXON

[123 N.C. App. 383 (1996)]

Having decided North Carolina follows the rebuttable presumption of agency, we now turn to the question of whether the trial court committed reversible error when it denied Chemical Leaman's summary judgment and granted plaintiffs' summary judgment as to the issue of agency between Chemical Leaman and Erixon. Specifically, Chemical Leaman contends it is entitled to summary judgment because Erixon, the owner of the tractor, deviated from the lease agreement with Chemical Leaman and was acting outside the scope of his authority when the accident occurred. We agree.

Summary judgment is granted by the trial court when there are no genuine issues as to material facts and where the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c); *Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E.2d 287, 290 (1978). When a case involves a controversy on a question of law on indisputable facts, summary judgment is appropriate. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971). In considering a summary judgment motion, the trial court construes all the evidence in a light favorable to the non-moving party, allowing the non-moving party a trial upon the slightest doubt as to the facts. *Moye v. Gas Co.*, 40 N.C. App. 310, 314, 252 S.E.2d 837, 841, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979).

The parties have already stipulated to the facts which are critical in this appeal: Erixon leased his GMC tractor to Chemical Leaman under an independent contractor service agreement. Since Erixon did not have I.C.C. numbers of his own, his tractor bore Chemical Leaman's I.C.C. number and operated in interstate commerce only under the authority of Chemical Leaman's I.C.C. permits. On the afternoon of 18 December 1991, Erixon "went off duty and left in the tractor to drive to Trenton, North Carolina to visit his son. The trip from Wilmington to Trenton and back to Wilmington was purely personal." On the way to his son's house, Erixon collided head-on with James Parker. Under the doctrine of *respondeat superior*, Chemical Leaman is not liable for Erixon's actions while Erixon was acting outside the scope of his employment. We therefore reverse the order of the trial court and remand for entry of summary judgment in favor of defendant Chemical Leaman.

Reversed and remanded.

Judges MARTIN, John C. and JOHN concur.