***********
Attorney for Defendant's motion to withdraw is hereby DENIED.
 ***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Berger along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms, with some modification, the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the subject matter of this claim. Defendant denied that the Industrial Commission has personal jurisdiction over it.
3. The alleged employer in this case is Homer C. Faircloth d/b/a Faircloth Trucking. Faircloth Trucking did not keep or maintain a policy of workers' compensation insurance on the date of injury, and had not qualified as a self-insured at such time. Defendant contends that Homer C. Faircloth did not have three or more regular employees at the time of the alleged injury and thus was not required to maintain in force a policy of insurance covering such claims.
4. The employee alleges that he sustained an injury by accident or specific traumatic incident to his lower back or spine on or about June 27, 2001.
 *********** ADDITIONAL EXHIBITS
1. Check stubs issued by the defendant-employer were marked as plaintiff's exhibit 1 and received into evidence.
2. A Form 18 was marked as plaintiff's exhibit 2 and received into evidence.
3. Check stubs issued by a subsequent employer were marked as plaintiff's exhibit 3 and received into evidence.
4. Supplemental answers to interrogatories were marked as plaintiff's exhibit 4 and received into evidence.
5. Plaintiff's Response to Defendant's Discovery was marked as defendant's exhibit 1 and received into evidence.
6. A Form 22 was marked as defendant's exhibit 4 and received into evidence.
7. A set of medical records marked as stipulated exhibit 1 was received into evidence.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff worked as a long-distance truck driver and was employed with the defendant from approximately April 2001 until his termination. At all times during the plaintiff's employment with defendant, he drove trucks owned and operated by his employer, or trucks that were leased to defendant by third parties.
2. Defendant has operated as an independent freight hauler or trucking company since approximately July 1999, and during such time, Faircloth Trucking regularly employed at least 11 other persons as drivers in the same or similar capacity as Mr. Merritt on or about June 27, 2001. All of its drivers operated under defendant's Interstate Commerce Commission number, including the plaintiff.
3. On or about June 27, 2001, the defendant refused or neglected to have in force a policy of workers' compensation insurance, nor had it qualified as a self-insured pursuant to North Carolina law.
4. Plaintiff did not own the truck or trailer that he operated and which he was provided by defendant. Plaintiff did not have an Interstate Commerce Commission number either.
5. Plaintiff was assigned a "trip" in mid-June 2001 to pick up a load of produce in California and deliver the same to North Carolina. He left North Carolina driving a tractor and trailer provided by defendant and drove to California where his truck was loaded.
On the return trip, plaintiff entered a scale in the State of Louisiana where he was advised that his tractor and trailer exceeded the per axle weight limit. He was forced to either move his load in order to comply with the laws of the State of Louisiana, or pay a ticket for the violation. Plaintiff opted, with the help of his wife Linda Merritt, to shift the load in the trailer so that he could continue back to North Carolina without incurring a fine.
While shifting the load of produce in the trailer with his wife on June 27, 2001, plaintiff lifted a box of produce and twisted, and experienced the immediate onset of sharp pain in his lower back and fell to the ground.
6. As a result of the June 27, 201 lifting incident, plaintiff sustained a back injury.
7. Plaintiff contacted the office of the defendant and notified Sean Faircloth of his injury by telephone. Sean Faircloth advised him to finish his trip and return to the office at the conclusion of it. Plaintiff continued his trip back to North Carolina after reporting his injury, and he arrived at the terminal for the defendant on June 29, 2001. Upon arriving in North Carolina, plaintiff met with Sean Faircloth and asked him to provide medical care or to tell him the name of the doctor that would be assigned. In response, Sean Faircloth told Merritt that there was no workers' compensation coverage. Mr. Faircloth also told plaintiff that he was being terminated from employment.
8. Plaintiff was terminated by the defendant because he had reported a work related injury to the defendant. At the time that plaintiff was terminated, he was unable to earn any wages because of his untreated back pain. Plaintiff's termination was related to the injury he sustained on June 26, 2001.
9. On July 3, 2001, plaintiff presented for evaluation at the emergency room of Cape Fear Valley Medical Center in Fayetteville. Plaintiff was directed to stay in bed as much as possible for the next three days.
10. Following his termination by the defendant on or about June 29, 2001, plaintiff remained unemployed and had no residence. He previously lived in his truck with his wife.
For a period of time following his termination, plaintiff and his wife were rendered homeless and slept under a bridge in Fayetteville, North Carolina.
11. Plaintiff presented himself for a routine physical in order to maintain his commercial driver's license. The physician who examined him refused to certify him as a commercial driver. Plaintiff conducted a reasonable and successful job search obtaining a job at a rate of pay lesser than the average weekly wage he was earning at the time of his injury. Plaintiff obtained other employment beginning on or about September 21, 2001 with RC Transport Service. In that employment, plaintiff earned the total sum of $1,541.00 through October 14, 2001. At the time of the hearing before the Deputy Commissioner, plaintiff remained so employed.
Plaintiff's earnings were reduced as a direct consequence of his injury and the loss of his employment with Faircloth resulting there from.
12. Plaintiff has not reached maximum medical improvement with regard to his back injury. At the time of the hearing, plaintiff continued to experience pain in his lower back and both of his legs. Plaintiff needs to undergo further medical treatment for his back.
13. At the time of plaintiff's injury on June 27, 2001, plaintiff's average weekly wage was $643.65. Plaintiff's post injury average weekly wage is $449.45.
14. The defendant's defense of this claim was based upon stubborn, unfounded litigiousness.
15. From September 1, 1999 through October 25, 2001, the defendant employed at least three or more employees. During this time period, the defendant willfully refused or neglected to secure workers' compensation coverage for his employees.
16. The defendant had the ability and authority to bring his business into compliance with N.C. Gen. Stat. § 97-93.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On June 27, 2001, there was an employer-employee relationship between the plaintiff and the defendant. G.S. § 97-2; Brown v. L.H.Bottoms Truck Lines, Inc., 227 N.C. 299, 42 S.E.2d 71 (1947).
2. On June 27, 2001, the parties were subject to the North Carolina Workers' Compensation Act. G.S. § 97-2(3).
3. On June 27, 2001, plaintiff sustained a specific traumatic incident arising out of and in the course and scope of his employment with the defendant in that he sustained an injury to his back in the work assigned. G.S. § 97-2(6).
4. Plaintiff is entitled to temporary total disability compensation in the amount of $429.13 for the time period beginning June 29, 2001 to September 21, 2001. G.S. § 97-29.
5. Plaintiff accepted other employment at a reduced wage on or about September 21, 2001. Plaintiff's earnings were reduced as the direct and proximate consequence of his injury and his subsequent termination as a result thereof. To the extent applicable, defendants have failed to present any evidence to support their implied contention that the plaintiff was terminated for reasons unrelated to his disability, and for which another non-disabled employee would have been terminated.Seagraves v. The Austin Company of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996).
6. Plaintiff is entitled to temporary partial disability benefits in the amount of $129.53 per week for up to 300 weeks from June 27, 2001. G.S. § 97-30.
7. Plaintiff is entitled to all reasonable and necessary medical care to give relief or to lessen the extent or period of his disability. G.S. § 97-25.
8. Defendant-employer's defense of this claim was based on unfounded litigiousness, and attorney's fees may be assessed. G.S. § 97-88.1.
9. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-93(b).
10. The defendant-employer had the ability and authority to bring his business into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal up to 100% of the amount of compensation due to the defendant-employers' employees injured during the time the defendant-employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
 ***********
Based upon the foregoing findings of fact, the undersigned makes the following:
 AWARD
1. Defendant shall pay to the plaintiff temporary total disability compensation in the amount of $429.13 per week for the time period from June 29, 2001 to September 21, 2001 for a total amount of $5,149.56. This sum has accrued and shall be paid in one lump sum subject to attorney's fees hereinafter provided.
2. Defendant shall pay to the plaintiff temporary partial disability benefits from September 21, 2001 in an amount of $129.53 per week for up to 300 weeks from June 27, 2001 and until further order of the Industrial Commission. The portion of this amount that has accrued, $5,958.38, shall be paid in a lump sum subject to the attorney's fee approved below.
3. Defendant shall provide all reasonable and necessary medical care to the plaintiff. As agreed upon by the parties, Dr. William F. Lestini is hereby designated as the plaintiff's treating physician.
4. A civil penalty is hereby assessed against defendant pursuant N.C. Gen. Stat. § 97-94(b) to in the amount of $21,000.00. A check shall be made payable to the Industrial Commission and sent directly to Kay Emanuel at the Industrial Commission.
5. An additional civil penalty is assessed against the defendant pursuant to N.C. Gen. Stat. § 97-94(d) in the amount of $8,315.33. A check shall be made payable to the Industrial Commission and sent directly to Kay Emanuel at the Industrial Commission.
6. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraphs 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter every fourth check shall be sent directly to plaintiff's counsel.
Defendant shall pay the costs.
Should Defendant have limited funds, benefits shall be paid to plaintiff pursuant to AWARD paragraphs 1 and 2 before payment of medical expenses and penalties to the Industrial Commission.
 *********** ORDER
1. The $1,500.00 placed by defendant in defendant attorney's trust account shall be immediately paid into plaintiff attorney's trust account for dispersal to plaintiff.
2. This matter is hereby IMMEDIATELY REMANDED to Deputy Commissioner Doug Berger for contempt proceedings.
3. This matter is hereby concurrently REFFERED to Assistant Attorney General Adrian Phillips for immediate action in executing the above AWARD and for criminal prosecution.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER