**Gordon SHINN and Connie Shinn, Plaintiffs,**

v.

**Christopher S. GREENESS, Anna Beck, Roger Townsend, and Ella Townsend, Defendants.**

No. 1:02CV00757.

United States District Court, M.D. North Carolina.

Nov. 18, 2003.

win W. Bowden, Tamura D. Coffey, Kevin Bradley Cartledge, Wilson & Iseman, Winston–Salem, NC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendants Anna Beck's and Roger and Ella Townsend's Motions to Dismiss [Documents # 33 & # 35] and Plaintiffs Gordon and Connie Shinn's Motion for Leave to Amend the [First] Amended Complaint [Document # 56].

## I. FACTUAL BACKGROUND

On April 29, 2001, Plaintiff Gordon Shinn was involved in a wreck with a tractor-trailer driven by Defendant Christopher Greeness, a citizen of Texas. (First Am. Compl. ¶¶ 3, 9–12 [Document # 21].) The wreck occurred on I–77 in Surry County, North Carolina. (*Id.* ¶ 9.) The Shinns allege that, due to the wreck, Mr. Shinn has suffered costly and painful injuries (*id.* ¶¶ 13–14, 16–20), his wife Connie Shinn has incurred costs related to her husband's injuries and has been "deprived of his society, service, comfort, companionship, and affection" (*id.* ¶¶ 22–24), and Mr. Shinn's car was damaged. (*Id.* ¶ 21.) At the time of the wreck, the Shinns were residents of Florida but are now residents of Virginia. (*Id.* ¶¶ 1–2.) On September 11, 2002, Plaintiffs sued Greeness in this Court for negligent and reckless operation of the tractor-trailer. (Compl.)

On April 15, 2003, Plaintiffs moved to Amend their Complaint to add as defendants Anna Beck ("Beck") and Roger and Ella Townsend ("the Townsends"). (Mot. for Leave to Amend [Document # 14].) Anna Beck, d/b/a Zippway Transport, was the authorized motor carrier whose cargo Greeness was transporting at the time of the wreck. (Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl.[1] at 3.) Anna Beck is a citizen and resident of Texas. Zippway Transport has its principal place of business in Texas. (Aff. of Anna M. Beck ¶¶ 1–2.) Roger and Ella

P. Brent Brown, William A. Jennings, Brown & Jennings, PLLC, Roanoke, VA, Lawrence A. Wagner, Jr., The Draper Law Firm, P.C., Winston–Salem, NC, for Plaintiffs.

Robert J. Lawing, H. Brent Helms, Robinson & Lawing, James Greer Welsh, Jr., Davis & Hamrick, L.L.P., Stacey D. Rubain, Orbock, Bowden, Ruark & Dillard, PC, Ed-

---

1. Plaintiffs inadvertently entitled this brief as a "Reply Brief" instead of a "Response Brief." Plaintiffs acknowledge that it is actually a Response Brief and the Court will cite it as such.

Townsend are the only executive officers of R & E Townsend Trucking, Inc. (Joint Aff. of Roger G. Townsend & Ella R. Townsend ¶ 2.) They owned the tractor Greeness was driving at the time of the wreck and contracted with Greeness for him to drive that tractor. (*Id.* ¶¶ 4–5; Defs. Roger & Ella Townsend's Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 3.) The Townsends are citizens and residents of Georgia. R & E Townsend Trucking, Inc. is a Georgia corporation with its principal place of business in Georgia. (Joint Aff. of Roger G. Townsend & Ella R. Townsend ¶¶ 1–2.)

Specifically, on April 15, 2003, Plaintiffs sought to amend their original Complaint to add the following allegations against Beck and the Townsends:

> 25. [sic] At the time [of the wreck,] Defendants, Anna Beck, Roger Townsend and Ella Townsend, DBA Zippway Transport were the owners of the tractor operated by the Defendant Christopher Greeness.
>
> 25. [sic] At the time [of the wreck,] the Defendant Christopher Greeness was acting as the agent, actual, implied or apparent or in the alternative as the employee of the Defendants Anna Beck, Roger Townsend, and Ella Townsend DBA Zippway Transport.

On May 29, 2003, United States Magistrate Judge Russell A. Eliason granted Plaintiffs' first Motion to Amend [Document # 20] and Plaintiffs filed their First Amended Complaint [Document # 21] on that date. Beck and the Townsends then filed Motions to Dismiss [Documents # 33 & # 35] for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiffs oppose the Motions filed by both Beck and the Townsends. Subsequent to Defendants' Motions to Dismiss, Plaintiffs filed a Motion for Leave to Amend the [First] Amended Complaint [Document # 56]. In their Proposed Second Amended Complaint [Document # 56], Plaintiffs' proposed amendments seek to allege additional facts and add additional causes of action against each party. (Proposed Second Am. Compl.) Plaintiffs also seek to add R & E Townsend Trucking, Inc. and Plaintiffs' own insurer, State Farm Mutual Automobile Insurance Company, as additional parties. (Proposed Second Am. Compl. ¶¶ 66–70.) All Defendants oppose Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint. For the reasons that follow, Defendants' Motions to Dismiss are DENIED and Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint is GRANTED.

## II. MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court will first address Beck's and the Townsends' Motions to Dismiss for lack of personal jurisdiction. As this Court has previously held in *Regent Lighting Corp. v. Galaxy Electrical Manufacturing, Inc.*, 933 F.Supp. 507 (M.D.N.C.1996), when a court's personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to prove the existence of jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993)). In deciding a motion to dismiss for lack of personal jurisdiction, the court may rule on the basis of the motion papers, supporting legal memoranda, relevant allegations of the complaint, and the affidavits, postpone the decision to permit discovery, or hold an evidentiary hearing. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989); *Crown Cork & Seal Co., Inc. v. Dockery*, 886 F.Supp. 1253, 1256 (M.D.N.C.1995). If the court, as in the present case, rules on the motion without an evidentiary hearing, then the plaintiff need only prove a prima facie case of jurisdiction. *See Carefirst of Md.*, 334 F.3d at 396 (citing *Combs v. Bakker*, 886 F.2d at 676). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993); *accord Carefirst of Md.*, 334 F.3d at 396. Although the court must draw all reasonable inferences arising from the proof in the plaintiff's favor, the court may look at both the plaintiff's and the defendant's proof (i.e., the pleadings, legal

memoranda, and affidavits) when drawing these inferences. *Mylan Labs.*, 2 F.3d at 62.

When addressing a question of personal jurisdiction, the court engages in a two-step inquiry. *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). First, the court must determine whether the applicable long-arm statute permits the exercise of jurisdiction over the defendant. *Id.; Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982). Next, the court must determine whether the exercise of jurisdiction comports with due process. *Ellicott Mach. Corp.*, 995 F.2d at 477; *Vishay Intertechnology*, 696 F.2d at 1064.

North Carolina's long-arm statute, North Carolina General Statutes section 1–75.4, was enacted "to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Since the North Carolina legislature designed the long-arm statute to extend personal jurisdiction to the limits permitted by due process, the two-step inquiry merges into one question: whether the exercise of jurisdiction comports with due process. *Ellicott Mach. Corp.*, 995 F.2d at 477; *Hanes Cos., Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C.1988).

A state's sovereignty over persons, property, and activities extends only within the state's geographical borders; therefore, a state's laws have no application in another state, except as permitted by that state or by comity. *Pennoyer v. Neff*, 95 U.S. 714, 722, 24 L.Ed. 565 (1877); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941 (4th Cir.1994). In order for a state to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). "Minimum contacts" means "that the defendant's conduct and connection with the forum State are

such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A single act or contract which creates a "substantial connection" to the forum state can support jurisdiction. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Minimum contacts requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Personal jurisdiction may be either specific or general. *Slaughter v. Life Connection of Ohio*, 907 F.Supp. 929, 933 (M.D.N.C.1995). Specific jurisdiction is established where the forum state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction exists where the claim does not have any relation to the defendant's contacts with the forum state. *Slaughter*, 907 F.Supp. at 933. In order to establish general jurisdiction, due process requires that the defendant's contacts with the forum state be "systematic and continuous." *Id.*

To determine the reach of personal jurisdiction, the Fourth Circuit has fashioned the following test, which considers whether:

(1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and

(2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests

of the several states in furthering fundamental substantive social policies.

*Lesnick,* 35 F.3d at 945–46.

In the present case, Beck and the Townsends argue that they do not have sufficient contacts with North Carolina to warrant this Court's exercise of jurisdiction over them. (Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 2.) They first contend that Plaintiffs' First Amended Complaint does not contain sufficient facts to demonstrate general jurisdiction over them. (*Id.*) Plaintiffs, however, contend "that they have the right to show 'general jurisdiction,' " but because they have established a prima facie case of specific jurisdiction, "[t]he Court does not need to determine the 'general jurisdiction' issue ...." (Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 7, 9.) As discussed below, the Court agrees that Plaintiffs have established a prima facie case of specific jurisdiction. Therefore, the Court declines to consider whether Plaintiffs have also established a prima facie case of general jurisdiction.

Because the Court is ruling on Defendants' Motions to Dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the question before the Court is whether Plaintiffs have proffered sufficient evidence to make out a prima facie case of specific jurisdiction over Beck and the Townsends. *See Carefirst of Md.,* 334 F.3d at 396, 398. At this stage of the proceedings, Plaintiffs are not required to prove personal jurisdiction by a preponderance of the evidence. *See id.* at 396. As stated above, in their First Amended Complaint, Plaintiffs make the following allegations of specific jurisdiction:

25. [sic] At the time [of the wreck,] Defendants, Anna Beck, Roger Townsend and Ella Townsend, DBA Zippway Transport were the owners of the tractor operated by the Defendant Christopher Greeness.

25. [sic] At the time [of the wreck,] the Defendant Christopher Greeness was acting as the agent, actual, implied or apparent or in the alternative as the employee of the Defendants Anna Beck, Roger Townsend, and Ella Townsend DBA Zippway Transport.

(First Amended Compl.)

Beck and the Townsends contend that "other than the existence of an alleged agency relationship with defendant Greeness, plaintiffs point to nothing else to show that [Beck and the Townsends] purposefully availed themselves of the privilege of conducting activities in North Carolina." (Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 8.) Beck and the Townsends argue, therefore, that Plaintiffs' "burden of establishing this Court's specific jurisdiction over [them] rises and falls on whether at the time of the [wreck] an agency relationship existed with defendant Greeness." (*Id.*) The Court notes that according to Wright and Miller, "An individual ... may be subject to the jurisdiction of the district court because of the activities of his agent within the forum state. In these cases the federal court will look closely to determine whether an agency relationship actually existed or whether it simply was alleged in an attempt to establish jurisdiction." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.5, at 220 (3d ed.2002). Beck and the Townsends do not dispute that if Greeness was acting as their agent at the time of the wreck, they are subject to personal jurisdiction within this Court. Therefore, if Plaintiffs can establish a prima facie case of agency, they will survive Beck's and the Townsends' Motions to Dismiss.

In determining whether Plaintiffs have established a prima facie case of jurisdiction over Defendants, the Court will first consider whether Plaintiffs have proffered sufficient evidence to demonstrate a prima facie case of jurisdiction over Defendants Roger and Ella Townsend. The Court will then consider whether Plaintiffs have proffered sufficient evidence to demonstrate a prima facie case of personal jurisdiction over Defendant Anna M. Beck.

**A. Personal Jurisdiction over Roger and Ella Townsend**

The Townsends argue that this Court may not exercise jurisdiction over them be-

cause "the record evidence demonstrates that [they] did not exercise the level of control over defendant Greeness necessary to give rise to an employment/agency relationship." (Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 13.) Plaintiffs contend, however, that they have alleged sufficient facts to establish a prima facie case of agency. (*See* Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 15–19.) In their First Amended Complaint, Plaintiffs allege, and the undisputed facts demonstrate, that the Townsends owned the truck Greeness was driving. (First Am. Compl. at 6; *see* Joint Aff. of Roger G. Townsend & Ella R. Townsend ¶¶ 4–5.) Plaintiffs also alleged in their First Amended Complaint that "[a]t the time [of the wreck,] the Defendant Christopher Greeness was acting as the agent, actual, implied or apparent or in the alternative as the employee of the [Townsends]." (First Am. Compl. at 6.) Plaintiffs rely on North Carolina General Statutes section 20–71.1(b) to demonstrate a prima facie case of agency. Section 20–71.1(b) states:

> Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

In explaining the application of section 20–71.1(b), the North Carolina Supreme Court has held:

> The prima facie showing of agency under N.C.G.S. § 20–71.1(b) is a rule of evidence and not one of substantive law. The rule shifts the burden of going forward with evidence to those persons better able to establish the facts than are plaintiffs. Its sole purpose is to facilitate proof of ownership and agency where a vehicle is operated by one other than the owner. The statute makes out a prima facie case which, nothing else appearing, permits but does not compel a finding for plaintiff on the issue of agency.

*DeArmon v. B. Mears Corp.*, 312 N.C. 749, 755–56, 325 S.E.2d 223, 228 (1985) (citations omitted). Plaintiffs, by demonstrating a prima facie case that Greeness was the Townsends' agent at the time of the accident, have thus satisfied their burden to establish a prima facie case of personal jurisdiction over the Townsends. *See Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676). The Plaintiffs allege that the Townsends owned the tractor Greeness was driving. Plaintiffs also allege that the Townsends controlled the tractor based upon their reliance on the statutory presumption of control. Given that Plaintiffs alleged that the Townsends owned the tractor Greeness was driving at the time of the wreck and the evidence indicates that they were the owners, the Court finds that Plaintiffs are entitled to rely upon the statutory presumption of control and therefore have established a prima facie case of a principal-agent relationship between Greeness and the Townsends.

The Townsends argue, however, that they are entitled to rebut Plaintiffs' prima facie case of an agency relationship between them and Greeness because the affidavits of Beck and the Townsends "clearly establish the absence of an agency relationship between [the Townsends] and defendant Greeness during the events referred to in the [First] Amended Complaint." (Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 11.) The Townsends' argument is misplaced because, as discussed previously, Plaintiffs only have the burden of proving a prima facie case of jurisdiction. Therefore, at this stage of the proceedings, the Court must draw all reasonable inferences and construe all factual disputes in the light most favorable to Plaintiffs. *See Mylan Labs.*, 2 F.3d at 60 (holding that when "deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor"). At present, the Court does not believe that the Townsends have presented evidence that clearly establishes that there is no reasonable dispute as to whether Greeness was the Townsends' agent. This is particularly true here where Plaintiffs cite the Townsends'

ownership of the truck as evidence of agency and the Townsends, on the other hand, assert in their joint affidavit that Greeness was an independent contractor. Therefore, given this dispute and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have satisfied their burden to prove a prima facie case of personal jurisdiction with respect to the Townsends.

For the foregoing reasons, therefore, the Court will deny the Townsends' Motion to Dismiss for lack of personal jurisdiction.

### B. Personal Jurisdiction over Anna M. Beck

Defendant Anna Beck also contests the Court exercising personal jurisdiction over her because the evidence in the record establishes that Greeness was not her agent at the time of the wreck. Plaintiffs contend, however, that they have proffered sufficient proof to establish a prima facie case that there was a principal-agent relationship between Beck and Greeness. As discussed above, at this stage of the proceedings, Plaintiffs need not prove by a preponderance of the evidence that Greeness was Beck's agent; they need only make out a prima facie case that Greeness was Beck's agent. The Court's inquiry, therefore, is to determine if Plaintiffs have satisfied their burden to establish a prima facie case of agency with respect to Defendant Beck.

In their First Amended Complaint, Plaintiffs allege that Beck owned the tractor involved in the wreck and therefore this Court has jurisdiction over her on that basis. (First Am. Compl. at 6.) Beck, however, has clearly demonstrated that the Townsends were the actual owners of the tractor. (Aff. of Anna M. Beck; Joint Aff. of Roger G. Townsend & Ella R. Townsend.) Because there is no factual dispute that Beck is not the owner of the truck, Plaintiffs may not rely on Beck's ownership to establish a prima facie case of agency. Plaintiffs alternatively argue, however, that because Beck is an "authorized carrier" (also referred to as a "motor carrier" or an "authorized motor carrier") under federal law, "for the purposes of this litigation ... Defendant Beck will be treated as the 'owner' of the tractor-trailer, which was being operated under her authority as a motor carrier as a matter of law." (Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 10–11.) Under federal law, an authorized carrier is "[a] person or persons authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902." 49 C.F.R. § 376.2(a). Beck seems to concede that she is an authorized motor carrier under federal law. (See Def. Anna M. Beck's Reply Br. to Pls.' Resp. to Beck's Mot. to Dismiss at 2–3 (arguing the merits of the motor carrier regulations but failing to argue that she is not a motor carrier for the purposes of those regulations).) Regardless, there is sufficient evidence in the record of Beck's motor carrier status to resolve this issue in Plaintiffs' favor. (See Aff. of Anna M. Beck; Joint Aff. of Roger G. Townsend & Ella R. Townsend.) Therefore, drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have at least met their burden at this stage of the proceedings to show that Beck is an authorized motor carrier.

To the extent that Beck is deemed to be an authorized motor carrier, Beck is governed by the provisions of 49 U.S.C. § 14101 et seq. and its relevant regulations, particularly those regulations found in 49 C.F.R. § 376.12. 49 U.S.C. § 14102(a)(4) states that "[t]he Secretary [of Transportation] may require a motor carrier ... to ... have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier." 49 C.F.R. § 376.12(c)(1) further states that "[t]he lease [between the authorized motor carrier and the owner of the motor vehicle] shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

Thus, Plaintiffs argue that because "the goods being shipped at the time of the wreck

were placed into interstate commerce under [Beck's] authority as a federal motor carrier," under North Carolina law, Beck is responsible for Greeness' negligence at the time of the wreck, regardless of whether Greeness was an employee of Beck or an independent contractor. (*See* Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 12.) Plaintiffs find support for their position based upon the case of *Parker v. Erixon,* 123 N.C.App. 383, 473 S.E.2d 421 (1996). Like the present case, *Parker* involved an accident between the driver of a tractor-trailer (Harold Erixon) and the plaintiff (Parker). *Id.* at 384, 473 S.E.2d at 422. The plaintiff sued both the driver of the tractor-trailer and the authorized motor carrier (Chemical Leaman Tank Lines, Inc.) for whom he was driving. *Id.* Parker was the owner of the tractor at the time of the wreck. Parker had leased the tractor to Chemical Leaman and was driving for Chemical Leaman as an independent contractor. *Id.* After thoroughly canvassing the relevant North Carolina and Fourth Circuit law, the North Carolina Court of Appeals held:

> The [Department of Transportation] regulations were not intended to impose upon carriers using leased equipment or the services of independent contractors greater liability than that imposed when a carrier uses its own equipment or employees. Under North Carolina law, liability of an owner of a motor vehicle for the acts of his employee is governed by the principle of *respondeat superior.* Under this principle, the employer is held vicariously liable for the negligent actions of his employee "if the negligent conduct occurred while the employee was acting within the course and scope of his employment." This same rule should apply to carriers who have leased equipment or arranged for the services of an independent contractor.

*Id.* at 390, 473 S.E.2d at 426 (citations omitted). Thus, the court held that, under North Carolina law, there is a rebuttable presumption of agency between an authorized motor carrier and its driver. *Id.* at 391, 473 S.E.2d at 426. In *Parker,* however, the court found that the motor carrier had rebutted the presumption of agency by showing that Erixon was on a frolic at the time of the wreck because he "went off duty and left in the tractor ... to visit his son. The trip ... was purely personal." *Id.* (internal quotations omitted). Therefore, the court of appeals held that "[u]nder the doctrine of *respondeat superior,* Chemical Leaman [was] not liable for Erixon's actions while Erixon was acting outside the scope of his employment." *Id.* at 391, 473 S.E.2d at 427. *Parker* would therefore apply in the present case so as to create a presumption of agency because there is no indication that Greeness was acting outside the scope of his employment at the time of the wreck.

For these reasons, based upon *Parker's* interpretation of the Federal Motor Carrier Act's effect on North Carolina law, Plaintiffs argue that Beck is presumptively liable for any negligence of Greeness. (*See* Pls.' Resp. Br. to Defs.' Joint Mem. of Law in Supp. of Mots. to Dismiss [First] Am. Compl. at 12–13.) Defendant Beck argues, however, that 49 U.S.C. § 14101 *et seq.* and 49 C.F.R. § 376.12 "do [ ] not elevate the carrier to the status of employer." (Def. Anna M. Beck's Reply Br. to Pls.' Resp. to Beck's Mot. to Dismiss at 3 (emphasis omitted).) Defendant Beck points to 49 C.F.R. § 376.12(c)(4) (adopted in 1992), which states that "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or the driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." Beck argues, therefore, that "[t]he determination of whether the driver is an employee or an independent contractor as to the carrier is left to state law, and specifically to the doctrine of respondeat superior." (Def. Anna M. Beck's Reply Br. to Pls.' Resp. to Beck's Mot. to Dismiss at 3.) The court in *Parker,* however, held that, under North Carolina law, there is a rebuttable presumption of agency between the driver and the authorized motor carrier. In making this determination, the court specifically cited the language of 49 C.F.R. § 376.12(c)(4) but still found a rebuttable presumption of agency between the driver and the authorized motor carrier. *See Parker,* 123 N.C.App. at 387, 390–91, 473 S.E.2d at 424, 426.

Therefore, under North Carolina law, Beck, as an authorized motor carrier, is presumptively liable for Greeness' actions. Plaintiffs' First Amended Complaint alleges that Greeness was the "agent, actual, implied, or apparent" of Beck. Plaintiffs' allegations are supported by the facts that Beck is an authorized motor carrier and Greeness was driving under her authority as an authorized motor carrier. Therefore, Plaintiffs have satisfied their burden to establish a prima facie showing of personal jurisdiction with respect to Defendant Beck.

For the foregoing reasons, therefore, Defendant Beck's Motion to Dismiss for lack of personal jurisdiction is DENIED.

### III. MOTION FOR LEAVE TO AMEND THE [FIRST] AMENDED COMPLAINT

Also before the Court is Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint [Document # 56]. As discussed above, in their Proposed Second Amended Complaint, Plaintiffs' proposed amendments seek to allege additional facts and add additional causes of action against each party. (Proposed Second Am. Compl.) Plaintiffs also seek to add R & E Townsend Trucking, Inc. and State Farm Mutual Automobile Insurance Company as additional parties. (*Id.* ¶¶ 66–70.) All Defendants oppose Plaintiffs' Motion. As discussed below, the Court in its discretion will GRANT Plaintiffs' Motion with respect to all Defendants.[2]

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). While the decision to grant a party leave to amend a pleading is within the sound discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits. *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir.1987). In exercising its discretion in re-

solving the question of whether to allow leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.'" *Id.* (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980)). The Fourth Circuit Court of Appeals has held "that mere delay in moving to amend is 'not sufficient reason to deny leave to amend,' [but] it is only when '[t]he delay is accompanied by prejudice, bad faith, or futility'" that the district court should deny leave. *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir.1986) (footnote omitted)).

Therefore, in determining whether to grant Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint, the Court will focus on whether Plaintiffs' amendments are the result of bad faith, will prejudice the Defendants, or are futile. When determining whether bad faith is present, the court "typically will take account of the movant's delay in seeking the amendment." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 651 (2d ed.1990). In *Deasy v. Hill*, the Fourth Circuit Court of Appeals held that " 'a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule.'" *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir.1987) (quoting 6 Wright & Miller, *supra*, § 1488 (1st ed.1971)). In *Deasy*, however, the plaintiff sought to amend his complaint on the eve of trial. *Id.* The court in *Deasy* stated that "[d]elay alone, without prejudice, does not support the denial of a motion for leave to amend." *Id.* The Court held, however, that "[a] motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Id.* at 40. In upholding the district court's denial of

---

2. In their Brief in Support of Their Motion for Leave to File the Second Amended Complaint, Plaintiffs argue that several legal theories support their Motion for Leave to Amend. Because the Court ultimately will, pursuant to Federal Rule of Civil Procedure 15(a), GRANT leave to amend to Plaintiffs based on the Court's sound discretion, the Court declines to consider Plaintiffs' arguments that they may amend as a matter of right pursuant to Rule 15(a) or that they may amend to conform to the evidence pursuant to Rule 15(b).

leave to amend, the court found both that the plaintiff unduly delayed in seeking the amendments and that the amendments would prejudice the defendant. *Id.*

■ Therefore, a district court generally should not rely on bad faith alone to deny leave to amend but should look for bad faith coupled with prejudice to the nonmoving party. In fact, the "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend." *Davis,* 615 F.2d 606, 613 (4th Cir.1980). "If an amendment 'is proposed late enough' and requires the opponent 'to engage in significant new preparation' or results in the 'added expense and the burden of a more complicated and lengthy trial,' prejudice may be found." *Smith v. Angelone,* 111 F.3d 1126, 1134 (4th Cir.1997) (quoting 6 Wright, Miller & Kane, *supra,* § 1487, at 623–26 (2d ed.1990)). Prejudice may also be found when a plaintiff belatedly moves to amend and "[t]he proof required to defend against [his] new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary." *Deasy,* 833 F.2d at 42. But "courts have allowed amendments ... when the opponent could not claim surprise, but effectively should have recognized that the new matter included in the amendment would be at issue." 6 Wright, Miller & Kane, *supra,* § 1487, at 630–32 (2d ed.1990); *accord Island Creek Coal Co.,* 832 F.2d at 280. Further, a "plaintiff typically will not be precluded from amending ... [his] ... complaint simply because that amendment may increase defendant's potential liability." 6 Wright, Miller & Kane, *supra,* § 1487, at 629 (2d ed.1990).

Finally, a court may deny leave if the amendments are futile. The court should deny leave on this basis only "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986) (citing *Davis,* 615 F.2d at 613).

In light of the legal standards the Court has enunciated, the Court will address Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint to determine if there are grounds on which allowing Plaintiffs leave to amend would be inappropriate. In making its ruling, the Court will focus primarily on whether Plaintiffs' proposed amendments will unfairly prejudice Defendants or whether they are futile. For purposes of clarity, the Court will first address Plaintiffs' proposed amendments with respect to Defendant Greeness. Second, the Court will jointly address Plaintiffs' proposed amendments with respect to Beck and the Townsends. Third, the Court will address Plaintiffs' request to add R & E Townsend Trucking as a party. Finally, the Court will address Plaintiffs' request to also add State Farm as a party.

A. Proposed Amendments Related to Defendant Greeness

Plaintiffs seek to Amend their First Amended Complaint to add a claim of willful and wanton conduct against Defendant Greeness because "Greeness knowingly violated the safety laws and regulations pertaining to the hours of service in order to meet a delivery deadline imposed by the other Defendants ... for which he would be financially penalized ...." (Proposed Second Am. Compl. ¶ 17(b).) Based on their allegations of willful and wanton conduct, Plaintiffs also seek to add a claim for punitive damages against Greeness. (*Id.* ¶ 18.) Defendant Greeness argues that Plaintiffs' Motion to Amend should be denied on the grounds of undue delay, prejudice, and futility. (Resp. of Def. Greeness to Pls.' Mot. for Leave to Amend the [First] Am. Compl. at 5, 9.) The Court will address Defendant Greeness' arguments in turn.

As stated above, Plaintiffs filed their Motion for Leave to Amend the [First] Amended Complaint on September 12, 2003. Plaintiffs argue that it was not until August 25, 2003, that Defendant Greeness supplemented his responses to Plaintiffs' Request for Production of Documents. (Pls.' Mot. for Leave to Amend the [First] Amended Compl. ¶ 12.) Plaintiffs contend that until they received these documents, they did not have the relevant facts necessary to amend their First Amended Complaint with respect to Defendant Greeness. (*See id.*) Greeness argues that Plaintiffs have unreasonably delayed

amending their First Amended Complaint by waiting until September 12, 2003, to file their Motion for Leave to Amend. As discussed above, delay alone is insufficient to deny leave to amend.

■ Defendant Greeness also asserts, however, that "because of the different standards for awarding compensatory and punitive damages, [a claim for punitive damages] would also have affected defense counsel's strategy in discovery and in preparing this case for trial" and therefore he will be prejudiced by Plaintiffs' amendments. (Resp. of Def. Greeness to Pls.' Mot. for Leave to Amend the [First] Am. Compl. at 8.) First, the Court notes that Plaintiffs from the outset alleged that Greeness "operated his vehicle in [a] careless and reckless manner, with *willful and wanton* disregard of the rights of the Plaintiff [Gordon Shinn] . . . in violation of N.C.G.S. Sec. 20–140(a) . . . ." (Compl. ¶ 11(b) (emphasis added).) Thus, Defendant Greeness has been on notice throughout this litigation that Plaintiffs might pursue punitive damages against him. Further, Defendants' concerns about preparing for trial have been alleviated because Magistrate Judge Eliason entered an order taking this case off the April 2004 trial calendar and extending discovery [*See* Document # 98]. Therefore, the opportunity to conduct any additional discovery will still be available to Greeness in order that he can adequately defend himself against these new allegations of willful and wanton conduct and Plaintiffs' claim for punitive damages. Therefore, the Court concludes that Plaintiffs' amendments will not prejudice Defendant Greeness.

Greeness finally argues that Plaintiffs' Motion for Leave to Amend should be denied as being futile. Defendant argues that the facts Plaintiffs have alleged are insufficient as a matter of North Carolina law to support a claim for punitive damages and therefore this Court should exercise its discretion to deny Plaintiffs' Motion for Leave to Amend. The Court, however, does not find Plaintiffs' proposed amendments to be "clearly insufficient or frivolous on [their] face" and therefore will not deny Plaintiffs' Motion on the basis that the proposed amendments are futile.

For the foregoing reasons, therefore, the Court will GRANT Plaintiffs' Motion for Leave to Amend with respect to Defendant Greeness.

## B. Proposed Amendments Related to Defendants Roger and Ella Townsend and Anna Beck

The Court will now consider Plaintiffs' proposed amendments with respect to Defendants Roger and Ella Townsend and Anna Back. The Court will first consider the Townsends' contention that one of Plaintiffs' proposed amendments that purportedly seeks to hold them liable as an authorized motor carrier should be denied as futile. The Court will then consider the arguments of both the Townsends and Beck that Plaintiffs' proposed amendments seeking to add a claim for punitive damages against each of them are prejudicial and futile and therefore should not be allowed.

### 1. Allegations that the Townsends Are an Authorized Motor Carrier

■ Plaintiffs' proposed amendments include an amendment alleging that the Townsends are liable "individually and/or collectively in whole or in part, as the owners of the truck driven by Defendant Greeness and/or pursuant to the Operating Agreement, and/or as the authorized motor carrier . . . ." (Proposed Second Am. Compl. ¶ 63.) The Townsends argue, however, that Plaintiffs' proposed allegations that they should be held liable as the authorized motor carrier are without merit and therefore the Court should deny these proposed amendments as futile. (Townsends' Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 9.) The Court, however, finds that Plaintiffs are merely pleading in the alternative in case the facts demonstrate that the Townsends, and not Beck, are the authorized motor carrier. At this stage of the proceedings, the Court does not find these amendments to be "clearly insufficient or frivolous on [their] face" and therefore will not deny leave to amend on the grounds of futility.

### 2. Punitive Damages Claim

Plaintiffs also seek to further Amend their First Amended Complaint "to add allegations of negligence and willful and wanton conduct, both direct and imputed, against the Defendant Anna M. Beck ... [and] against the Defendants Roger Townsend and Ella Townsend ...." (Pls.' Mot. for Leave to Amend the [First] Am. Compl. ¶¶ 16–17.) Like Defendant Greeness, Roger and Ella Townsend and Anna Beck also argue that the Court should deny Plaintiffs' Motion as futile and prejudicial. (Townsends' Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 1–2; Def. Anna Beck's Br. in Resp. to Pls.' Mot. to Amend the [First] Am. Compl. at 2.)

The Townsends and Beck argue that Plaintiffs' proposed amendments are futile.[3] The Townsends first argue that "[i]n the present case, there is no agency relationship between the Townsends [or Beck] and Greeness as a matter of law." (Townsends' Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 6.) Taking the allegations in Plaintiffs' Proposed Second Amended Complaint in the light most favorable to Plaintiffs, the Court disagrees. As the Court found in its discussion of both the Townsends' and Beck's Motions to Dismiss for lack of personal jurisdiction, Plaintiffs have made out a prima facie case of agency; therefore, Plaintiffs' amendments cannot be considered to be futile on the basis of lack of personal jurisdiction.

The Townsends and Beck, for different reasons, argue that Plaintiffs' claim for punitive damages against them is futile. In their Proposed Second Amended Complaint, to support their claim for punitive damages against the Townsends and Beck, Plaintiffs allege that the Townsends and Beck "failed in their obligations and duties to monitor, direct and control the operations of the tractor-trailer by Defendant Greeness ...." (Proposed Second Am. Compl. ¶ 32(d).) With respect to Defendant Beck, Plaintiffs further allege that, as an authorized motor carrier, Beck had a duty to maintain control

of Greeness and ensure that he complied with federal laws. Plaintiffs allege that instead of exercising this duty, Beck instead instituted a system that penalized drivers for late deliveries which in turn encouraged drivers to violate federal safety laws and regulations, and it is further alleged that Beck, by her own admission, in violation of federal law, "did not exercise any control over Mr. Greeness' operation of the tractor, the route or the hours that he drove it." (Id. ¶¶ 38–42 (internal quotation marks omitted).) Plaintiffs further allege that Beck knew that her delivery system caused "drivers to violate safety laws and regulations concerning hours of service, duty status, and maintaining proper logs," resulting in multiple violations. (Id. ¶ 45.) Finally, Plaintiffs allege that Beck knew that her rigorous delivery schedule would cause violations of federal law and "could likely result in the severe injury or death of other motorists" and that she therefore "maliciously and deliberately persisted in having her deliveries made under patently dangerous and obviously illegal circumstances ...." (Id. ¶¶ 46–47.)

With respect to the Townsends, Plaintiffs allege that they "participated in a delivery system or scheme along with the Defendant Beck," which "encouraged violations by drivers of federal laws and regulations and/or [the] common law." (Id. ¶ 57.) Plaintiffs further allege that the Townsends had "an affirmative duty to regulate [Greeness'] hours of service, the routes and appropriate rest stops," but instead, by their own admission, "had no control over the route Mr. Greeness selected to travel or the hours in which he elected to drive." (Id. ¶¶ 58–59 (internal quotation marks omitted).) Plaintiffs allege that the Townsends' failure to "perform the duties with regards [sic] to the safety requirements imposed upon them ... constitute active negligence and willful and wanton conduct ...." (Id. ¶ 60.) Finally, Plaintiffs allege that the Townsends knew "that the rigors of the delivery schedule in which they participated with the Defendant Beck and its inherent penalties for late deliv-

---

3. The Townsends and Beck filed separate briefs and raised different arguments opposing Plaintiffs' Motion for Leave to Amend. To the extent that the arguments in each Defendant's brief address proposed amendments that actually affect both the Townsends and Beck, the Court will consider these arguments with respect to both the Townsends and Beck.

ery would likely cause the Defendant Greeness to violate federal safety standards, and while foreseeing that these violations could likely result in the severe injury or death of other motorists, the Defendants Townsend maliciously, deliberately and willfully failed to perform their duties to exercise control over the Defendant Greeness ...." (*Id.* ¶ 62.)

■ The Townsends, however, contend that even in light of these allegations, Plaintiffs' claim for punitive damages is futile because "plaintiffs base their claim for punitive damages in part on a theory of vicarious liability ... [and] plaintiffs have failed to plead and cannot prove that the Townsends [or Beck] condoned, or were ever responsible for [sic] Greeness' actions." (Townsends' Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 8.) The Townsends are partially correct that North Carolina law does not allow punitive damages on the basis of vicarious liability. Specifically, North Carolina General Statutes section 1D–15, which governs the award of punitive damages, provides in subsection (c) that:

> Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Based upon the language of the statute, punitive damages are not precluded here because viewed in the light most favorable to Plaintiffs, Plaintiffs have alleged facts and claims supporting punitive damages which are not asserted "*solely* on the basis of vicarious liability." Rather, Plaintiffs have alleged that the Townsends and Beck played an active role in bringing about Greeness' alleged willful and wanton conduct and that the Townsends and Beck themselves engaged in willful and wanton conduct. (*See* Proposed Second Am. Compl. ¶¶ 32, 38–47, 57–65.)

Defendant Beck nevertheless argues that the Court should deny Plaintiffs leave to amend their First Amended Complaint to add a claim for punitive damages because the "case law is clear that a violation of a regulation or code[,] without more, is insufficient to give rise to willful or wanton conduct." (Def. Anna Beck's Br. in Resp. to Pls.' Mot. to Amend the [First] Am. Compl. at 14.) In support of their claims for punitive damages, Plaintiffs allege that Beck and the Townsends violated not only the federal motor carrier statutes and regulations but they also violated the common law by failing to control Greeness and by encouraging him to "violate [federal] safety laws and regulations concerning hours of service, duty status, and maintaining proper logs." (*See* Proposed Second Am. Compl. ¶¶ 34–51, 52–65.) Beck further contends, however, that "Plaintiffs have not alleged any facts that suggest that Defendant Beck [or the Townsends] established the alleged delivery system in blatant disregard of federal motor carrier law, or knowingly in disregard of the safety of other drivers." (Def. Anna Beck's Br. in Resp. to Pls.' Mot. to Amend the [First] Am. Compl. at 14.) Without deciding whether Beck's assertion that "case law is clear that a violation of a regulation or code[,] without more, is insufficient to give rise to willful or wanton conduct," the Court finds that, viewed in the light most favorable to Plaintiffs, Plaintiffs' proposed amendments allege willful and wanton conduct beyond the mere "violation of a regulation or code." Instead, Plaintiffs allege that Beck, with whom the Townsends acted in concert, "maliciously and deliberately persisted in having her deliveries made under patently dangerous and obviously illegal circumstances ..., and she did so with deliberate and calculated indifference to the plight she knew she was placing the traveling public so that her deliveries could be made on time." (Proposed Second Am. Compl. ¶ 47.) As evidence of this willful and wanton conduct, Plaintiffs allege that Beck and the Townsends failed to exercise control over Greeness, that Beck's delivery system encouraged drivers to violate the law and thus placed other motorists at risk, and because of Beck's willful and wanton behavior her drivers were cited for numerous violations over

an approximately thirty-nine-month period. (*Id.* ¶¶ 39–47.)

With respect to the Townsends' and Beck's arguments that Plaintiffs' claim for punitive damages is futile, the Court finds that, viewed in the light most favorable to Plaintiffs in the procedural posture of a motion to amend, Plaintiffs' proposed amendments are not "clearly insufficient or frivolous on [their] face." Therefore, within its discretion the Court will not deny Plaintiffs' Motion for Leave to Amend on the basis that Plaintiffs' claims are futile.

■ In addition to their arguments that Plaintiffs' proposed amendments are futile, the Townsends and Beck also argue that Plaintiffs' Motion for Leave to Amend will delay trial and unduly prejudice them. As with Defendant Greeness, their arguments that Plaintiffs' proposed amendments will delay the trial are moot because of Magistrate Judge Eliason's removal of the case from the April 2004 trial calendar. The Townsends argue, however, that Plaintiffs' additional allegations of negligence and claims for punitive damages will prejudice them by extending the trial date and subjecting them to "lengthy discovery." (Townsends' Resp. Br. to Pls.' Mot. for Leave to File Second Am. Compl. at 11–12.) As stated above, the trial date has already been extended. Any contentions that additional discovery will prejudice either Beck or the Townsends are purely speculative as these Defendants have shown no reason why they will not be able to adequately prepare their defense against the new claims Plaintiffs are being allowed to assert in their Proposed Second Amended Complaint.

For the reasons stated above, the Court will GRANT Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint with respect to Defendants Roger and Ella Townsend and Anna Beck.

### C. Proposed Amendments to Add R & E Townsend Trucking, Inc. as a Party

Plaintiffs also seek to add R & E Townsend Trucking, Inc. as a defendant. Plaintiffs argue that their "allegations against R & E Townsend Trucking, Inc. are pled in the alternative and are the same as apply to Defendants Roger and Ella Townsend." (Pls.' Mot. for Leave to Amend the [First] Am. Compl. ¶ 20.) As discussed above, the Court will grant Plaintiffs' proposed amendments with respect to the Townsends. Because the Townsends have admitted that they are the only executive officers of R & E Townsend Trucking (Joint Aff. of Roger G. Townsend & Ella R. Townsend ¶ 2), Plaintiffs' Motion to add R & E Townsend Trucking as a defendant will not prejudice R & E Townsend Trucking. Therefore, the Court will GRANT Plaintiffs' Motion to add R & E Townsend Trucking, Inc. as a party to this case.

### D. Proposed Amendments to Add State Farm Mutual Automobile Insurance Company as a "Named Defendant"

■ Finally, Plaintiffs' "proposed Second Amended Complaint seeks to add ... State Farm Mutual Automobile Insurance Company ... as a 'named defendant.'" (Pls.' Mot. for Leave to Amend the [First] Am. Compl. ¶ 19.) Plaintiffs seek to add State Farm as a named defendant because, at the time of the wreck, Plaintiffs had uninsured-motorist insurance with State Farm. (*See* State Farm Mutual Automobile Insurance Co.'s Resp. Br. to Pls.' Mot. for Leave to Amend the [First] Am. Compl. at 3.) Plaintiffs seek to allege that "Plaintiffs hereby place the Defendant State Farm on all notice required by law and the policy of a potential uninsured/underinsured motorist claim including any and all potentially applicable notices under any application of Florida No Fault Laws to the extent that any such laws may apply to this case." (Proposed Second Am. Compl. ¶ 68.) Under Plaintiffs' policy with State Farm, if Plaintiffs and State Farm are unable to agree on what amount State Farm owes Plaintiffs, Plaintiffs must "file a lawsuit in the proper court against the owner or driver of the uninsured motor vehicle and [State Farm] ...." (State Farm Mutual Automobile Insurance Co.'s Resp. Br. to Pls.' Mot. for Leave to Amend the [First] Am. Compl. at 3 (internal quotations omitted).) This language in the insurance policy is the reason for Plaintiffs' proposed amendment to add State Farm as a defendant. State Farm

argues, however, that Plaintiffs should not now be allowed to add it as a party because Plaintiffs should have added it as a party by April 15, 2003, the original final date for amendments. (*Id.* at 4–5.) State Farm further contends that Plaintiffs violated the terms of their insurance policy by not previously adding it as a defendant. (*Id.* at 7.) At this stage of the proceedings, the Court in its discretion will allow Plaintiffs to add State Farm because State Farm has adduced no legitimate reasons why it would be prejudiced by Plaintiffs' proposed amendments. In its Response Brief, State Farm's only arguments for prejudice are based on "[t]he named defendants' reply briefs, and their arguments and case law ... incorporated by reference herein." (*Id.* at 9.) Presumably, State Farm is adopting the same grounds asserted by the other Defendants as its reasons why Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint should be denied on the basis of prejudice and futility. The Court previously addressed but did not adopt the reasoning the other Defendants offered as grounds to deny Plaintiffs' Motion for Leave to Amend. Therefore, for the reasons previously stated, Plaintiffs' Motion for Leave to Amend with respect to Defendant State Farm is GRANTED.

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have established prima facie cases that this Court has personal jurisdiction over Defendants Roger and Ella Townsend and Anna Beck. Therefore, the Court will DENY Beck's and the Townsends' Motions to Dismiss for lack of personal jurisdiction. In addition, the Court, in its discretion, finds no compelling reason not to allow Plaintiffs' Motion for Leave to Amend the [First] Amended Complaint. Therefore, Plaintiffs' Motion for Leave to Amend is GRANTED in all respects.

An ORDER consistent with this MEMORANDUM OPINION shall be filed contemporaneously herewith.